UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLINTON DAVIS,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN,<br><br>    Respondent. | CAUSE NO. 3:22-CV-520-MGG |

OPINION AND ORDER

Clinton Davis, a prisoner without a lawyer, filed a habeas corpus petition to challenge his convictions for attempted murder, criminal recklessness, and resisting law enforcement under Case No. 48D01-9502-CF-67. Following a jury trial, on September 23, 1996, the Madison Superior Court sentenced him to eighty years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> During the morning of February 22, 1995, Davis and his wife, Cora Davis, had a heated argument in their home in Anderson, and Davis left in anger. That evening at approximately 6:00 p.m., Cora attended a church service. During the service, a friend of Cora's told her that her son had telephoned and wanted to talk to her. But when Cora got to the phone, it was Davis on the line. Davis was trying to make amends with Cora, but she told him that she "didn't want him no more." Davis hung up the phone, and Cora returned to the church service.

> At approximately 8:30 p.m., Davis arrived at the church and sat down next to Cora. Davis said, "I ain't nobody to play with. Don't play with me." Id. at 292. Cora knew that Davis had a gun and she said, "Don't pull the gun." Id. at 295. Then Cora started to run out of the church. Davis fired his gun twice, once toward the ceiling and once toward Cora, but Cora got away unscathed. Davis ran out of the church, and the minister, Ron Ealey, and two other men chased after him. After running for several blocks, Davis ran inside an abandoned house.
>
> Someone notified the police about the shootings, and officers arrived at the location of the abandoned house where Davis was hiding. As officers approached the house, Davis fled, and officers chased him. The officers were ordering Davis to stop, but he continued to run, and he shot at two of the officers. Fortunately, both of those shots missed their targets. The chase lasted approximately ten minutes before police apprehended Davis.
>
> The State charged Davis with three counts of attempted murder, two counts of resisting law enforcement, and one count of criminal recklessness. A jury found him guilty as charged. The trial court imposed Davis' sentence as follows: forty years on each attempted murder count, with two of those sentences to run concurrently, but consecutive to the third forty-year sentence; three years on each resisting law enforcement count, to run concurrent with the other sentences; and three years for criminal recklessness, to run concurrent with the other sentences. Thus, the trial court sentenced Davis to a total executed term of eighty years.

ECF 9-17 at 2-3.

In the petition, Davis asserts that he is entitled to habeas relief because trial counsel and appellate counsel provided ineffective assistance by failing to investigate, argue, and present evidence regarding his mental competency. He further asserts that the three convictions for attempted murder violate his right against double jeopardy.

Additionally, Davis asserts that he is entitled to habeas relief because his lack of mental competency rendered him actually innocent. These claims are an attempt to assert a freestanding claim of actual innocence. While actual innocence may be a basis to excuse procedural deficiencies, federal courts have not recognized actual innocence

2

as an independent basis for habeas relief. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017). Consequently, the court declines to further consider the assertions of actual innocence as freestanding claims.

## TIMELINESS

The Warden argues that the petition is untimely. The statute of limitations for habeas corpus cases is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Based upon review of the record, the limitations period began to run in this case from the date on which the judgment became final pursuant to Section 2254(d)(1)(A).

3

On direct appeal, the Indiana Supreme Court denied transfer on May 6, 1998. ECF 9-2 at 5. Therefore, his conviction became final for purposes of 28 U.S.C. § 2244(d)(1)(A) when the time for petitioning the Supreme Court of the United States for a writ of certiorari expired on August 4, 1998. *See* U.S. Sup. Ct. R. 13(1) (petition for writs of certiorari must be filed within 90 days after entry of judgment); *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (when a state prisoner does not petition the Supreme Court of the United States on direct appeal, his conviction becomes final when the time for filing a petition expires). Two hundred seventy-four days later, on May 5, 1999, Davis tolled the limitations period by initiating post-conviction proceedings, which culminated in the Indiana Supreme Court's denial of transfer on November 4, 2004. ECF 9-1 at 9; ECF 9-3 at 4. The federal limitations period expired ninety-one days later on February 3, 2005. Though Davis initiated efforts to obtain post-conviction relief thereafter, these efforts did not restart the federal limitations period, nor did they "open a new window for federal collateral review." *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). Because Davis filed the petition seventeen years too late, the court finds that the petition is untimely.

## PROCEDURAL DEFAULT

The Warden also argues that Davis' ineffective assistance claims are procedurally defaulted. Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state

4

courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Davis did not present any of his ineffective assistance claims to the Indiana Supreme Court in a petition to transfer on direct review or at the post-conviction stage. ECF 9-13; ECF 9-18. Therefore, these claims are procedurally defaulted.

## ACTUAL INNOCENCE

Davis asserts that actual innocence excuses the untimely and procedurally defaulted nature of his habeas claims. A habeas petitioner can overcome untimeliness by establishing that the court's refusal to consider an untimely claim would result in a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 569 U.S. 383, 394 (2013). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*,

5

513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006). In this context, the court may consider evidence only if it is reliable and was not presented at trial. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015). "That evidence must also be new in the sense that it was not before the trier of fact." *Arnold v. Dittmann*, 901 F.3d 830, 836–37 (7th Cir. 2018) "The reviewing court then considers the total record—all the evidence, old and new, incriminatory and exculpatory—and makes a probabilistic determination about what reasonable, properly instructed jurors would do." *Gladney*, 799 F.3d at 898. "It is not the role of the court to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

As new evidence, Davis offers the personal reactions of the assigned judges at trial. He maintains that one trial judge remarked that Davis did not commit attempted murder and removed himself from the case and that a second judge agreed with the first judge but remained on the case until his conviction. It seems unlikely that the reaction of a judge to trial evidence could itself amount to evidence that a criminal defendant is actually innocent, particularly when the reaction was not accompanied by the entry of a directed verdict and when a sufficiency of the evidence claim was rejected on direct appeal. ECF 9-12 at 6-8. And it is even less clear as to how a judge's personal reaction during the course of a trial could ever be "new in the sense that it was not before the trier of fact."

As new evidence, Davis also offers: (1) statements made by doctors; (2) statements made by police officers at trial; and (3) statements made by two police officers at depositions that were not introduced at trial. He maintains that these statements indicated that "he was not in right mind, mental breakdown, staggering, accidental gun firing when he fell to the ground. And was not trying to kill or hurt any one." ECF 1 at 5. According to the record, doctors' involvement with Davis' case were limited to the pretrial determination of whether Davis was mentally competent to stand trial. Specifically, Gregory Richardson, M.D., and Malcolm Jackson, Ph.D., were appointed and ordered to file written reports, which they did in May 1995. ECF 9-1 at 2-3. The trial court considered these reports and found Davis to be mentally competent. *Id.* at 4. Because the trial court was presented with the doctors' statements and any statements made at trial, these categories of evidence cannot qualify as new evidence.

Davis does not expressly describe the statements made by two police officers at depositions, but he attaches to his complaint his appellate brief on direct appeal. Review of this brief indicates that he is referring to the deposition testimony of Officer Jake Brooks and Officer Ray Wilson. The appellate brief reads:

> On direct examination, Officer Brooks testified, "He raised it to my direction and show it." He went on to state, "He did not stop completely, but he did slow and turn to shoot at me." However, he further stated that he did not see anything. He did not see a muzzle flash.
>
> On cross examination, the officer acknowledged that Defense Counsel had taken his deposition on July 22. Defense Counsel asked him, "You heard me asking the questions, but as far as the actual direction of where the gun was pointed, you can't say for sure where that was, is that correct?" The officer responded, "That's what I said." Upon further examination, Defense Counsel again asked, "'But as far as the actual direction of where

>the gun was pointed, you can't say for certain where that was?' And your answer was, 'No, sir.'" To this question, Officer Brooks testified, "That's correct."
>
>* * *
>
>Officer Ray Wilson also testified. He stated that he responded to a call for assistance at the Gethsemane Church of God in Christ on February 22, 1995. He heard a shot. He saw the suspect running through a backyard. He testified that the Defendant turned his torso and shot at him. Lt. Sax was between Officer Wilson and the person who fired the gun. On cross-examination, Officer Wilson stated that the "Defendant was running and turned his torose while he was running and just fired around at us." He acknowledged that in his deposition on July 22, he stated that he could not tell what direction the gun was pointed.

ECF 1-1 at 9-10. In other words, the statements made by the two police officers at their depositions were also presented at trial. Because Davis identifies no new evidence, the court cannot find that actual innocence excuses the untimely and procedurally defaulted nature of his claims.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability when the court dismisses a petition on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, there is no basis for finding that jurists of reason would debate the correctness of this procedural ruling, so there is no basis for encouraging Davis to proceed further in federal court.

For these reasons, the court:

(1) DISMISSES the petition (ECF 1) because the claims are untimely;

(2) DENIES Clinton Davis, a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

(3) DIRECTS the clerk to close this case.

SO ORDERED on February 8, 2023

                                              s/ Michael G. Gotsch, Sr.
                                              Michael G. Gotsch, Sr.
                                              United States Magistrate Judge